Kenneth COUGHLIN, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 86 CV 1254.**

United States District Court, E.D. New York.

Sept. 21, 1987.

As Amended Oct. 22, 1987.

Mark S. Probert, Bay Shore, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., by Kevan Cleary, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff appeals from the decision of the Secretary terminating his closed period of disability in December 1983. For the reasons that follow, the case is remanded to the Secretary for further proceedings.

## BACKGROUND

Plaintiff, a 42–year-old former delivery truck driver, injured his wrist while at work in May 1982. He stopped working on October 6, 1982, when he entered the hospital for surgery to install a silastic implant (an artificial bone) in his wrist. The subsequent program of physical therapy and other non-surgical treatment was discontinued because plaintiff was not progressing, and in August 1983 plaintiff underwent a wrist fusion. Plaintiff returned to work in February 1984. In April 1984, however, he reinjured his wrist while pushing something heavy and became unable to continue work. In May 1984, plaintiff underwent treatment consisting of electronic bone growth stimulation (referred to as "EBI") and remained in a cast until he returned to work in November 1984. Plaintiff was able to work for only four months, and he underwent another wrist fusion in April 1985 and remained in a cast at least until June 17, 1985.

Plaintiff was granted a closed period of disability from October 6, 1982, to December 7, 1983 (R. 47), on the ground that his wrist injury met Listings 1.12 (fractures of an upper extremity) and 1.13 (soft tissue injuries of an upper or lower extremity), 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 45–49.) Plaintiff obtained a hearing on April 16, 1985, before an Administrative Law Judge

("ALJ") to review the termination of benefits as of December 7, 1983. The evidence before the ALJ consisted of medical reports from five doctors, two residual functional capacity assessments, and the testimony of the claimant. By decision dated July 30, 1985, the ALJ affirmed the termination of benefits, and the Appeals Council declined review. (R. 3–4.)

## EVIDENCE

Dr. Ralph Davidoff began treating plaintiff for his wrist condition in August 1982. His medical reports detail his diagnoses and the results of subsequent treatment. (R. 89–95.) In November 1983, following the first wrist fusion, Dr. Davidoff concluded that plaintiff would remain totally disabled through December 1983. (R. 89.)

Dr. Manouchehr Amini examined plaintiff on December 7, 1983, on behalf of the Social Security Administration. He stated that plaintiff's left wrist was completely fused and could not be flexed in any direction, but that grasping power, sensation, range of motion in other joints, and reflexes were within normal limits, and that there was no tenderness or chronic swelling. (R. 97.) He determined that plaintiff could lift and carry ten pounds with his right hand and three to four pounds with his left hand occasionally. (R. 97.)

Dr. H. Runsdorf examined plaintiff on December 19, 1983, on behalf of the New York State Department of Social Services. He concluded that plaintiff met Listing 1.13 and that a "diary date" should be set, which indicates that he believed that plaintiff's condition would eventually improve to the point where it would no longer meet the Listing. (R. 99.)

On April 12, 1984, after plaintiff reinjured his wrist, Dr. Davidoff stated that x-rays showed some separation of the fusion mass, although plaintiff felt no pain on direct pressure. (R. 93.) On May 3, 1984, Dr. Davidoff noted that plaintiff was suffering increased pain and that "we are definitely losing the fusion." (R. 93.) By May 17, 1984, Dr. Davidoff noted that plaintiff was unable to work because of pain in his arm and that he would have to be put on disability. (R. 93.) Dr. Davidoff concluded that the April 1984 injury was a continuation of the original injury. (R. 111.)

Dr. Ellis D. Rand examined plaintiff on behalf of a workers' compensation insurance carrier on three occasions, the last being June 19, 1984. Dr. Rand concluded that plaintiff was temporarily totally disabled due to incomplete healing of the fusion. He stated that if the EBI treatment were unsuccessful, further surgery would be required. (R. 101.)

On November 5, 1984, following treatment with the electronic bone-growth stimulator, Dr. Davidoff stated that plaintiff no longer felt pain and was to begin strengthening exercises in anticipation of returning to work on November 19, 1984. (R. 94.)

A residual functional capacity ("RFC") assessment dated November 10, 1984, stated that plaintiff had no functional capacity in his left hand. (R. 102.) A second assessment, dated November 27, 1984, stated that plaintiff could lift up to ten pounds with his left hand. (R. 105.)

A letter dated February 1, 1985, from Dr. Davidoff indicates that company physicians examined plaintiff on December 6, 1984, and concluded that the wrist fusion was not solid. (R. 109.) Dr. Davidoff concluded that the prognosis was guarded. (R. 109.)

Dr. M. Ather Mirza examined plaintiff on several occasions. On December 3, 1984, Dr. Mirza noted that plaintiff's wrist fusion was not fully healed, and he recommended another fusion. Accordingly, plaintiff underwent a wrist fusion on April 19, 1985, two days after the hearing before the ALJ. The hearing record was held open to include a report of the surgery. As of June 17, 1985, the date of Dr. Mirza's letter, plaintiff was still in a cast, and Dr. Mirza stated that plaintiff was totally disabled "regarding the upper left extremity," and that there is "no promise implied" of future restoration of function.

## DECISION OF THE ALJ

The ALJ found that the record did not demonstrate that plaintiff had an impair-

ment that met or equaled the Listings after December 1983. (R. 13.) Then he determined that although plaintiff's impairment prevented him from performing his past relevant work, it did not do so for a continuous period of twelve months after December 1983. (R. 13.) The ALJ found that plaintiff had the residual functional capacity to perform sedentary work. (R. 13–14.) Applying Rules 201.27, –.28, and –.29, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that plaintiff was not disabled as of December 1983. (R. 14–15.) The Appeals Council denied plaintiff's request for review on February 18, 1986, and the decision of the ALJ became the final decision of the Secretary. The present action followed.

Plaintiff asserts the following grounds for reversing the decision of the Secretary:

(1) The ALJ failed to properly apply the regulations requiring the Secretary to show that plaintiff could engage in substantial gainful activity;

(2) plaintiff was not properly considered for a trial work period;

(3) the ALJ and Appeals Council failed to consider all available medical evidence;

(4) the transcript of the proceedings is useless because it contains a large number of "INAUDIBLES"; and

(5) the ALJ's determination that plaintiff can engage in the full range of sedentary work is not supported by substantial evidence.

Additionally, in a letter to the Court dated May 21, 1987, plaintiff's attorney argues that the case should be remanded because plaintiff is a member of the class defined in *Schisler v. Heckler*, 787 F.2d 76 (2d Cir. 1986). The Secretary asserts that the decision of the ALJ is supported by substantial evidence and has failed to address plaintiff's other arguments.

## DISCUSSION

At the outset, plaintiff's argument that he is a member of the *Schisler* class is without merit. *Schisler* addressed the Secretary's practice of terminating benefits without showing an improvement in the claimant's condition. In the present case,

the ALJ concluded that plaintiff's condition had improved to the point where he could engage in substantial gainful activity. Accordingly, the ALJ applied the legal standard required by *Schisler*.

Similarly, plaintiff argues that the ALJ failed to apply properly 20 C.F.R. § 404.- 1594, which requires the Secretary to demonstrate that the claimant can perform substantial gainful activity before benefits may be terminated. Although the regulation was not finalized at the time of the ALJ's decision, the ALJ did conclude that plaintiff was able to engage in substantial gainful activity as of December 7, 1983. In reaching that conclusion, however, the ALJ misapplied or failed to apply several other regulations.

It appears from the uncontradicted medical evidence that plaintiff's injury in April 1984 may have been a continuation of the same impairment that had disabled him until December 7, 1983. Plaintiff's treating physician (Dr. Davidoff) and an independent examining physician (Dr. Rand) commented on the inadequacy of the November 1983 wrist fusion and the need for further treatment. Dr. Davidoff explicitly stated that the April 1984 injury was a continuation of the original impairment.

▮▮▮ That plaintiff's impairment may have been continuing has two implications. First, in evaluating continuing disabilities, a temporary improvement in the claimant's condition does not warrant a finding that the individual is no longer disabled. Social Security Ruling 82–64, 1982 S.S.R. 870, 873. The reports by Drs. Davidoff, Runsdorf and Rand indicate that plaintiff's condition in December 1983 was a temporary improvement due to the November 1983 wrist fusion. Second, if the impairment were continuing, the ALJ's belief that plaintiff's impairment had to last for twelve continuous months after December 1983 to satisfy the durational requirement of 20 C.F.R. § 404.1509 would be erroneous. The durational requirement would have been met when plaintiff's impairment lasted twelve continuous months from the onset date of October 6, 1982. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.13.

The ALJ used the rules contained in 20 C.F.R. Pt. 404, Subpt. P, App. 2, commonly called the "grids," to determine that plaintiff was not disabled. (R. 14.) The "grids" do not apply, however, to a claimant limited to sedentary work unless he has full bilateral manual dexterity. *Id.* at § 201.00(h). In fact, section 201.00(h) describes an individual with a permanent injury to the right hand, which limits him to sedentary jobs that do not require bilateral manual dexterity and concludes as follows:

> None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary) a finding of disabled would be appropriate.

*Id.* Example 1.

■ The medical evidence raises a substantial question as to whether plaintiff has full use of his left hand, and the ALJ failed to make a finding that plaintiff had full bilateral manual dexterity. Therefore, the ALJ's application of the rules in Appendix 2 was erroneous.

■ The ALJ relied, in part, on plaintiff's return to work in concluding that the plaintiff was not disabled after December 7, 1983. (R. 14.) Section 404.1592, 20 C.F.R. § 404.1592, permits a claimant to return to work on a trial basis and provides that the Secretary will not consider that work as showing that the claimant's disability has ceased until the claimant has rendered services for at least nine months. The evidence in the record demonstrates that plaintiff worked for a total of only seven months from the onset of disability to the time of the hearing. Accordingly, the ALJ's reliance on plaintiff's return to work was erroneous. *See, e.g., Love v. Heckler,* 564 F.Supp. 195 (W.D.N.C.1983).

■ Plaintiff also argues that the Appeals Council failed to consider a letter dated June 17, 1985, from Dr. Mirza, one of plaintiff's surgeons. In that letter, Dr. Mirza states that plaintiff is still totally disabled, lending support to plaintiff's argument that he was under a continuing disability. The letter appears to have been sent timely to the Appeals Council in response to an invitation to submit any additional, relevant material. (R. 5.) The letter was not made part of the record and the Appeals Council decision did not mention it. On appeal, the Secretary has not addressed the issue. Accordingly, the letter should have been made part of the record. *See* Fed.R.App.P. 10.

The transcript of the administrative hearing is marked "inaudible" in numerous places. The gaps occur at some important points, such as when the ALJ and plaintiff's attorney discuss whether the April 1984 incident was a new injury and whether plaintiff is entitled to a trial work period. (R. 33–34.) Although the quality of the record might not alone be enough to warrant a remand in this case, the gaps in the record do coincide with areas in which the ALJ committed errors and the inadequacy of the transcript does not help the Secretary's position.

Finally, plaintiff argues that the ALJ's finding that plaintiff retained the residual functional capacity to perform sedentary work as of December 1983 is not supported by substantial evidence. In reaching that conclusion, the ALJ explicitly relied upon plaintiff's testimony that he was able to return to work in February 1984 (R. 13–14), a report from Dr. Amini (a consulting physician) (R. 96–98), and a November 1983 prediction by Dr. Davidoff (a treating physician) that plaintiff would be disabled through December 1983 (R. 89).

■ Although there may be substantial evidence in the record supporting the ALJ's conclusions, two of the three elements on which he relied and cited do not specifically support this conclusion. Reliance on plaintiff's ability to resume work was improper if plaintiff was eligible for a trial work period. Dr. Amini never concluded that plaintiff retained full manual dexterity, a pre-condition to applying the "grids." Even if we were willing to consider Dr. Amini's report to be sufficient substantial

evidence, it may only demonstrate a temporary improvement immediately following surgery that later proved to be unsuccessful, as discussed above. Reliance on Dr. Davidoff's prediction alone would probably be insufficient to constitute sufficient evidence, in light of this record viewed as a whole.

## CONCLUSION

Therefore, the ALJ's conclusion that plaintiff was no longer disabled as of December 7, 1983, may have been based on erroneous applications of law. Accordingly, the case is remanded to the Secretary for further proceedings. The Secretary is directed to (1) include Dr. Mirza's June 17, 1985, letter in the record; (2) determine whether the April 1984 injury was a continuation of plaintiff's original impairment; (3) determine whether plaintiff was entitled to a trial work period; and (4) determine whether plaintiff retained sufficient bilateral manual dexterity such that application of the "grids" is appropriate, and if not, to decide the case without application of the "grids."

SO ORDERED.